**JS-6**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

ORANGE COUNTY COASTKEEPER, a
California non-profit corporation,

          Plaintiff,

    v.

ACD, LLC, et. al.,

          Defendants.

Case No.: 8:23−cv−02409−JVS−DFM

**CONSENT DECREE**

**(Federal Water Pollution Control
Act, 33 U.S.C. §§ 1251 *et seq.*)**

1

**CONSENT DECREE**

2    The following Consent Decree is entered into by and between Orange County

3  Coastkeeper ("Coastkeeper" or "Plaintiff"); defendants ACD, LLC, Cryogenic Industries,

4  Inc., Cryogenic Industries Service Companies, LLC, and Nikkiso America, Inc.

5  (collectively "ACD"); and defendant CREF3 Pullman 2 Owner LLC ("CREF3") (ACD

6  and CREF3 may be collectively referred to herein as "Defendants"). The entities entering

7  this Consent Decree are each an individual "Settling Party" and collectively the "Settling

8  Parties."

9    **WHEREAS,** Coastkeeper is a 501(c)(3) non-profit public benefit corporation

10  organized under the laws of the State of California, with its main office in Costa Mesa,

11  California;

12    **WHEREAS**, Coastkeeper's mission is to protect the region's water quality and

13  resources so they are swimmable, drinkable, and fishable for present and future

14  generations;

15    **WHEREAS**, Defendants own and/or operate an industrial facility located at

16  located at 2321 S. Pullman Street Santa Ana, CA 92705 ("Facility");

17    **WHEREAS**, on or about October 18, 2023, Coastkeeper sent a letter to

18  Defendants, and each of them, of Coastkeeper's intention to file suit after the expiration

19  of sixty (60) days for certain alleged violations of the federal Water Pollution Control Act

20  pursuant to 40 C.F.R. § 135.2 ("Notice Letter").

21    **WHEREAS,** Coastkeeper alleges that ACD's operations at the Facility result in

22  discharges of pollutants to the Santa Ana municipal separate storm sewer system (MS4),

23  which flows to an Unnamed Tributary of Peters Canyon Channel, then to Peters Canyon

24  Channel, then to San Diego Creek, then to Newport Bay, and ultimately to the Pacific

25  Ocean (collectively, the "Receiving Waters") in violation of the substantive and

26  procedural requirements of the Storm Water Permit and the Clean Water Act, Sections

27  301(a), 402, 33 U.S.C. §§ 1311(a), 1342;

28

**WHEREAS**, on December 19, 2023, Plaintiff filed a complaint against Defendants in the United States District Court, Central District of California (Civil Case No. : 8:23−cv−02409), alleging violations of § 301(a) and § 402 of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Industrial General Permit Order 2014-0057-DWQ as amended in 2015 and 2018 (EFFECTIVE July 1, 2020) (the "IGP") at the Facility (the "Complaint");

**WHEREAS**, the Settling Parties have agreed that it is in their mutual interest, and therefore choose, to resolve Coastkeeper's allegations in the Complaint through settlement and entry of this Consent Decree to avoid the cost and uncertainties of litigation;

**WHEREAS**, Plaintiff alleges Defendants violated the substantive and procedural requirements of the IGP and the Clean Water Act with respect to the Facility;

**WHEREAS**, Defendants deny any and all allegations in the Notice Letter and Complaint relating to the Facility;

**WHEREAS**, the Settling Parties have agreed that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2.     Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located

within the Central District of California;

    3.    The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

    4.    Plaintiff has standing to bring this action;

    5.    There are no unnamed necessary and indispensable parties to this action;

    6.    The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.    <u>OBJECTIVES</u>

    7.    It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251 et seq., and to resolve those issues alleged by Plaintiff in its Complaint. Considering these objectives and as set forth fully below, ACD agrees to comply with all applicable provisions of this Consent Decree, the IGP, and all applicable provisions of the Clean Water Act. Specifically, ACD agrees to comply with Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations set forth in the IGP in the industrial and production areas.

## II.    <u>AGENCY REVIEW AND TERM OF CONSENT DECREE</u>

    8.    Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively, the "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendants. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

9.    The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree in its docket. If, by the end of the 45-day review period referenced in paragraph 8, *supra*, the Federal Agencies offer no objection, the Settling Parties agree to request immediate entry of this Consent Decree by the Court and if, after fourteen (14) days, the Court has not entered the Consent Decree, the Settling Parties agree that any party to this agreement may request a hearing before the Court to seek entry of the Consent Decree.

10.  This Consent Decree shall terminate on the later of the following events: three (3) years after the Effective Date ("Termination Date"); one (1) year after implementation of any Action Plan described in paragraph [19]; or, if there is an ongoing, unresolved formal dispute regarding ACD's compliance with this Consent Decree, the Consent Decree will terminate within fifteen (15) days' notice by the Plaintiff that the dispute has been fully resolved (hereinafter, "Termination Date," as applicable). Notwithstanding the foregoing, should ACD's industrial activities at the Facility cease during the Term hereof, ACD's affirmative obligations hereunder, except for any payment or data retention obligations and any obligations with respect to compliance for the portion of the calendar year ACD was operating at the Facility, shall cease upon the Regional Board's approval of a Notice of Termination or its equivalent for the Facility. Under such circumstances, the dated of the Regional Board's approval of a Notice of Termination shall be the Termination Date.

## III.  **DEFINITIONS**

11.  Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a.    "BMPs" means Best Management Practices.

b. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

c. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday

d. "Discharge Point" means each outfall and discharge location designated in the then-current SWPPP for the Facility.

e. "Forecasted Rain Event" means a forecasted rain event with a greater than twenty-five percent (25%) probability of precipitation above 0.05 inches as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/)[1] for Veterans Sports Park, Tustin, CA, USA.

f. "MIP" means a Monitoring Implementation Plan.

g. "Qualifying Storm Event" or "QSE" shall have the definition set forth in the General Permit.

h. "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

i. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

j. "SWPPP" means a Storm Water Pollution Prevention Plan.

k. "Term" means the period between the Effective Date and the "Termination Date."

## IV. POLLUTION CONTROL REQUIREMENTS

## A. Storm Water Pollution Reduction Measures

12. The storm water pollution control measures required by this Consent Decree shall be designed and operated to comply fully with the requirements of the IGP.

---

[1] Available at https://forecast.weather.gov/MapClick.php?lat=33.7159&Ion=-117.83

13.    ACD shall develop and implement BMPs such that contaminants in storm water discharges from the Facility maintain concentrations that are equal to or less than the values set forth in Table 1 below (the "Table 1 Values"). Failure to achieve Table I Values shall not be deemed a violation of the Permit or this Consent Decree so long as ACD continues to make timely and diligent efforts as required by the Permit and herein to further reduce the level of pollutants in the discharges.

14.    **Structural and non-Structural BMPs at the Facility**

14.1.1.    By July 1, 2024, ACD shall employ a series of asorbing wattles/filter/filtration socks (such as Filtrexx EnviroSoxx, Biochar, or CleanWay MetalZorb) designed to absorb copper, iron, aluminum, and zinc at the west driveway to intercept flow leading to DP#1. Filter socks shall be deployed twenty-four (24) hours prior to each Forecasted Rain Event, and such wattles/filter/filtration socks shall be placed in multiple layers as necessary to ensure maximum contact with storm water prior to discharge and shall remain in place until such rain event cease. Additionally, by September 1, 2024, ACD shall install or construct such structures to divert the storm water flow from the southern portion of the Facility into the loading bay ramp. If approval from government agencies is required and cannot be timely acquired before September 1, 2024, temporary structures may be used until the relevant permits can be obtained. Any such structures that require permitting shall be installed as soon as possible, but no later than sixty (60) days after receipt of said permits. Storm water flow moving into the existing sump shall be treated with wattles/filter/filtration socks deployed as necessary to ensure maximum contact with storm water prior to discharge and such filter socks shall remain in place until the rain event ceases. All wattles/filter/filtration socks must be replaced as recommended by the manufacturer, but no less frequently than once per year.

14.1.2.    ACD shall undertake the following measures:

(a) By July 1, 2024, develop a written protocol that within twenty-four (24) hours prior to a Forecasted Rain Even, all parts stored outside the building will be adequately covered with tarps, lids, or other coverings sufficient to prevent exposure to rain fall;

(b) ACD shall incorporate the written protocol described in paragraph 14.1.2(a) into the Facility's revised SWPPP within thirty (30) days of development of those protocols;

(c) By September 1, 2024, ACD shall construct permanent structural coverage, which may include tent canopies, for all materials stored outside;

(d) By September 1, 2024, relocate the sandblasting equipment on the west side of the building so it is under a permanent, overhead structural cover to prevent exposure to rainfall and, install an adequate curtain to prevent dispersal of dust when sandblasting; or install a fully sealed enclosure for the sand blasting equipment.

(e) By September 1, 2024, relocate the washing area to along the building wall under a structural cover and install a splash curtain around the outdoor covered parts cleaning area;

(f) By July 1, 2024, develop a written protocol that within twenty-four (24) hours prior to a Forecasted Rain Event, all cylinders, parts or materials to be salvaged and any hand trucks not under cover will be adequately covered with tarps, lids, or other coverings sufficient to prevent exposure to rainfall;

(g) By July 1, 2024, implement a written maintenance program to periodically paint/repair the equipment not under cover, including tanks and the overhead crane, located at the south outdoor area,

including a written log of maintenance dates, event/description and name and signature of personnel who performed such maintenance;

(h) By September 1, 2024, relocate under permanent, overhead structural covers or construct permanent structures to cover the equipment used at the cutting area and the metal parts collection bin and, install curtains at all exterior doorways to the cutting area, unless such are prohibited under the Fire Code or other regulation;

(i) By July 1, 2024, develop a written protocol to ensure that the filters for the welding area exhaust fan are changed in accordance with the recommendations of the equipment manufacturer, including a log recording dates of inspection, replacement of such filter, and personnel name and signature performing inspections or replacement;

(j) By July 1, 2024, a relocate under permanent structural covers or construct permanent structural covers for any equipment used outside immediately adjacent to the Hydro Shop, and install curtains at all doorways to the Hydro Shop;

(k) By September 1, 2024, construct an overhang to cover the storage racks at the east wall of the building.

14.1.3.    By July 1, 2024, ACD shall deploy wattles/filter/filtration socks designed to absorb copper, iron, aluminum and zinc at the east driveway to intercept flows leading to DP#2. Filter socks at this location should be deployed at least twenty-four (24) hours prior to  a Forecasted Rain Event and remain in place during the rain event.

14.1.4.    ACD shall conduct sweeping with a ride-on vacuum sweeper with a daily sweeping program in outdoor high-traffic areas to reduce accumulation of particulate matter containing metals, in particular zinc and copper generated from tire and

brake wear. The size of the ride-on vacuum sweeper shall be such that it is able to operate in the areas between the Test Stand and Indoor Production areas as indicated on the Site Map for the Facility (attached hereto as **Exhibit A**). These sweeping activities shall be conducted in between the Test Stand and Indoor Production areas as indicated on the Site Map for the Facility and anywhere else at the Facility where deposition of tire wear from forklifts and other vehicles is visible. The sweeping locations may be modified from the Exhibit A based upon the BMPs implemented hereunder provided that the locations address visible deposition of tire wear from forklifts and other vehicles related to ACD's industrial activities. ACD shall keep and maintain a daily sweeping log onsite specifying the date, time, and location of each sweeping event, along with identification of personnel doing the sweeping.

**B.    Sampling and Analysis**.

15.    ACD will maintain a recording rain gauge capable of recording rainfall to 0.1 inches. ACD shall maintain the recording rain gauge in accordance with the manufacturer's recommendations, maintain records of all maintenance and rain data, and provide such rain gauge data to Plaintiff with ACD's Monitoring Plan, as described below.

16.    ACD will develop a plan (the "Monitoring Plan") for monitoring all storm water discharges from industrial areas resulting from QSEs pursuant to the requirements of this Consent Decree and the IGP.

16.1.    ACD shall analyze samples for all parameters identified in Table 1 below.

16.2.    During the Term of this Consent Decree, ACD shall collect samples of storm water discharges from each discharge point in conformity with its Monitoring Plan included in its Stormwater Pollution Prevention Plan ("SWPPP") and upload the data to the California Stormwater Multiple Application and Report Tracking System ("SMARTS").

16.3.    ACD shall comply with the analytical methods as required by

this Consent Decree and the IGP.

   16.4. ACD shall post on SMARTS the complete laboratory results of all sampling required by this Consent Decree within thirty (30) days of receipt from the laboratory and notify Plaintiff of such posting.

  17. ACD shall analyze storm water samples from each discharge point for at least six (6) QSE's during each Reporting Year for the term of the Consent Decree. ACD shall sample three (3) QSE's during the first half of each Reporting Year (July-December) and three (3) QSE's during the second half of the Reporting Year (January-June), provided there are enough rain events to comply with this provision.

  18. During the Term of this Consent Decree, any two exceedances of any Table 1 parameter shall trigger the Action Plan requirements set forth in Paragraph 19 below.

### Table 1. Numeric Values for Storm Water Discharges

| Parameter | Limit | Source of Limit |
|---|---|---|
| pH | 6.5 – 8.5 S.U. | Basin Plan |
| Total Suspended Solids | 100 mg/L | Permit NAL |
| Oil and Grease | 15 mg/L | Permit NAL |
| N+N | 0.68 mg/L | Permit NAL |
| Total Recoverable Aluminum | 0.75 mg/L | Permit NAL |
| Total Recoverable Iron | 1.0 mg/L | Permit NAL |
| Total Recoverable Zinc | 0.21 mg/L | Permit NEL |
| Total Recoverable Copper | 0.027 mg/L | Permit NEL |
| Total Recoverable Lead | 0.194 mg/L | Permit NEL |
| Dissolved Zinc | 0.12 mg/L | California Toxics Rule ("CTR")[2] |
| Dissolved Copper | 0.013 mg/L | CTR |

---

[2] 40 C.F.R. 131.38

| Dissolved Lead | 0.065 mg/L | CTR |
|---|---|---|

## C.   Action Plans and Stipulated Penalties

19.     In the event the requirement to prepare an Action Plan is triggered at the Facility pursuant to Paragraph 18 above, ACD shall prepare and submit to Coastkeeper a plan for reducing and/or eliminating the discharge of the parameter in question during the next reporting year at the Facility (an "Action Plan"). In any year that an Action Plan is required, such Action Plan shall be submitted by July 1 immediately following the reporting year the Action Plan was triggered.

19.1.     Each Action Plan submitted shall include, at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Table 1 Value(s), (2) an assessment of the potential source of each contaminant exceedance, (3) the identification of additional BMPs to reduce each such contaminant, which must include advanced treatment and other appropriate measures, that shall be implemented to achieve compliance with the Table 1 Value(s), and (4) time schedule(s) for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure all BMPs are implemented as soon as possible, but in no event later than October 1 immediately following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Parties. If ACD seeks to propose a time schedule beyond October 1, it shall seek Coastkeeper's approval of the time schedule no later than July 1.

19.2.   Coastkeeper shall have thirty (30) days upon receipt of ACD's Action Plan to provide ACD with comments. Within thirty (30) days of receiving Coastkeeper's comments on the Action Plan, ACD shall accept and incorporate Coastkeeper's comments into the Action Plan, or, alternatively, justify in writing why any comment is not being incorporated. Any disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP

set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan and/or ACD's failure to incorporate Coastkeeper's comments shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section VI, Dispute Resolution, below.

19.3.     When an Action Plan is completed, ACD shall revise the Facility SWPPP within thirty (30) days of completion of the Action Plan to reflect the changes required by the Action Plan. ACD shall notify Coastkeeper in writing when the Action Plan has been implemented and shall submit the revised SWPPP to Coastkeeper for review and comment as set out in Paragraphs 23, 25 and 26 below.

19.4.     If ACD is required to submit an Action Plan to Coastkeeper in accordance with Paragraphs 18 and 19 above, ACD shall make a payment of Seven Thousand Dollars ($7,000.00) per Action Plan concurrently with each Action Plan submittal. Such payment shall be delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

19.5 For each Instantaneous Maximum NEL violation, as defined in in Section V.C.1 of the IGP, ACD agrees to make a stipulated ~~penalty~~ payment of $5,000 per violation to the Wetlands and Wildlife Care Center, 21900 Pacific Coast Highway, Huntington Beach, CA 92646 by July 1 of each reporting year in which the NEL violation(s) occurred. This payment is to be made in addition to any Action Plan payment.

**D.     Visual Observations**

20.     During the life of this Consent Decree, ACD shall conduct and document visual observations during every discharge sampling event at each location where storm water is discharged from the Facility.

**E.     SWPPP and MIP Revisions**

21.    Within thirty (30) days of the Effective Date, ACD shall revise the Facility SWPPP to reflect the terms of this Consent Decree and comply with the IGP.

22.    ACD shall revise the site maps attached to the SWPPP to correct deficiencies cited in the Complaint and Notice Letter.

23.    ACD shall notify Plaintiff when the revised SWPPP is uploaded to SMARTS. Plaintiff shall provide comments, if any, to ACD within thirty (30) days of receipt of notice that the revised SWPPP has been uploaded. ACD shall incorporate Plaintiff's comments into the SWPPP or shall justify in writing as to why any comment is not incorporated within thirty (30) days of receiving comments.

24.    ACD shall revise the SWPPP and incorporated MIP if there are any changes in operations, including, but not limited to, changes to storm water discharge point(s) or revisions and/or additions to the BMPs, including those implemented pursuant to this Consent Decree or to any ERAs, and upload the revisions to SMARTS.

25.    ACD shall notify Plaintiff when SWPPP revisions are uploaded to SMARTS.

26.    Plaintiff shall provide comments, if any, to ACD within thirty (30) days of receipt of notice that any SWPPP revisions have been uploaded. ACD shall incorporate Plaintiff's comments into the SWPPP or shall justify in writing as to why any comment is not incorporated within thirty (30) days of receiving comments.

27.    This section does not prevent ACD from submitting a SWPPP amendment or revision to SMARTS in any way, nor does it impair ACD's ability to modify the SWPPP unilaterally.

28.    Any disputes as to the adequacy of the SWPPP or revisions thereto shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section VI below.

**F.    Employee Training**

29.    Within thirty (30) days of the Effective Date of this Consent Decree, ACD shall develop and implement a training program (the "Training Program"), in compliance

with the IGP and its SWPPP. At a minimum, the Training Program shall include the following:

29.1    Language. ACD shall conduct the Training Program in at least one language or languages in which all designated employees participating in the Training Program are fluent. 29.2    Non-Storm Water Discharges. ACD shall train all designated employees on the prohibition of NSWDs, so that employees know what constitutes a NSWD, that non-storm water discharges can result from improper surface washing or the release of any substance from the property, and how to detect and prevent non-storm water discharges to ensure compliance with this Consent Decree and the IGP.

29.3    Best Management Practices (BMPs). ACD shall train all designated employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at properties under ACD's jurisdiction that are regulated under the IGP.

29.4    ACD shall maintain training records to document compliance with this Section and shall provide Plaintiff with a copy of these records if requested. These training records must indicate the date, instructor and nature of the training but are not required to disclose any employee information other than name.

29.5    Training shall be provided by a qualified professional who is familiar with the requirements of this Consent Decree and the SWPPP. The training shall be repeated as necessary to ensure that all employees assigned storm water responsibilities are familiar with the requirements of this Consent Decree and the SWPPP. All new designated staff shall receive this training before assuming responsibilities for implementing the ACD's SWPPP or MIP.

30.    Storm Water Sampling. ACD shall designate an adequate number of

employees or contractors necessary to collect storm water samples from each outfall identified in the MIP. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

31.    Visual Observation Training. ACD shall designate and train an adequate number of Designated Employees necessary to collect storm water samples from each discharge location at the Facility and conduct visual monitoring as required by this Consent Decree. Such training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

**G.    Compliance Monitoring**

32.    **Site Inspections.** During the term of this Consent Decree, ACD shall permit representatives of Coastkeeper to conduct one (1) wet weather site inspection and one (1) dry weather site inspection per year at the Facility during the Term of this Consent Decree.

33.    Coastkeeper shall provide ACD at least 48 hours' notice in advance of any site inspections. If notice is given on a Friday, Coastkeeper shall provide 72 hours' notice. For any site inspection planned to occur in wet weather during a qualified storm event, where a change in forecasted precipitation would frustrate wet weather observations and/or samples, Coastkeeper shall be entitled to reschedule the site inspection. Coastkeeper agrees to give ACD's representatives at least fifteen (15) hours' notice of its intent to reschedule a requested wet weather site inspection.

34.    Provided, that in the event of a dispute regarding ACD's compliance with this Consent Decree and provided a site inspection would be relevant to resolving the Parties' dispute, Coastkeeper may request an additional site inspection and the Parties agree to meet and confer regarding the request. ACD shall not unreasonably deny Coastkeeper's request for an additional site inspection.

35.    ACD shall notify Plaintiff when Annual Reports are uploaded to SMARTS.

36.     During the Term of this Consent Decree, ACD shall provide Coastkeeper with a copy of all documents, monitoring and/or sampling data, written communications, and/or correspondence related to water quality at the Facility that are submitted to the Regional Water Board, State Water Board, and/or any Federal, State, or local agency, county, or municipality. Such reports and documents shall be provided to Coastkeeper concurrently as they are sent to the agencies, counties, and/or municipalities. Any documents, written communications, and/or correspondence related to Defendants' compliance with the Storm Water Permit and/or to storm water quality received by Defendants from any Federal, State, or local agency, county or municipality shall be provided to Coastkeeper within five (5) business days of receipt by Defendants.

## V.     ENVIRONMENTAL PROJECT, ATTORNEYS' FEES AND COSTS, AND STIPULATED PAYMENTS

### A.     Environmental Project

37.     To remediate the alleged environmental harms alleged in the Complaint, ACD agrees to make a payment of Forty-Five Thousand Five Hundred ($45,500.00) to the Wetlands and Wildlife Care Center to fund environmental project activities that will benefit Southern California waters, including local wetlands restoration and/or preservation, within sixty (60) days from the Effective Date. Payments shall be made via check made payable to the "Wetlands and Wildlife Care Center" and delivered to: Wetlands and Wildlife Care Center, 21900 Pacific Coast Highway, Huntington Beach, CA 92646. ACD shall copy Coastkeeper and its attorneys on any correspondence relating to such payments.

### B.     Reimbursement of Attorneys' Fees and Costs

38.     ACD shall pay a total of One Hundred Thirty Thousand Dollars ($130,000.00) to Plaintiff for its reasonable attorneys' fees and costs incurred by investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be due within sixty (60) days of the Effective Date. Payment shall be made to Orange

County Coastkeeper and delivered to Orange County Coastkeeper, Attn: Barry Lee, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

**C.    Compliance Monitoring and Oversight**

39.    ACD agrees to partially defray Coastkeeper's monitoring of ACD's compliance with this Consent Decree in the amount of Thirty-Five Thousand Dollars ($35,000.00). Payment shall be made to Orange County Coastkeeper and delivered to Orange County Coastkeeper, Attn: Barry Lee, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626 within sixty (60) days of the Effective Date.

**VI.    DISPUTE RESOLUTION**

**A.    Continuing Jurisdiction**

40.    This Court shall retain jurisdiction over this matter until the Termination Date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree, unless a Party files and is granted a timely motion requesting an extension of time for the Court to retain jurisdiction. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

**B.    Meet and Confer**

41.    A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date the notice is received. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

**C.    Dispute Resolution**

42.    If the Settling Parties cannot resolve a dispute by the end of the meet and confer process, the Parties may agree to enter into the Alternative Dispute Resolution

process provided by the United States District Court for the District of California, including but not limited to stipulating to a hearing before a Magistrate Judge.

43.     If the Settling Parties cannot resolve a dispute by the end of the Alternative Dispute Resolution process, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion if requested by any Settling Party.

44.     <u>Burden of Proof</u>. In any dispute resolution proceeding, the moving party shall have the burden of demonstrating compliance or non-compliance with the terms of the Consent Decree.

45.     <u>Enforcement Fees and Costs</u>. Litigation costs and fees incurred in conducting a meet and confer session(s) or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded to the prevailing party in accordance with the standard established by § 505 of the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

## VII.    <u>MUTUAL RELEASE OF LIABILITY, DISPUTE RESOLUTION AND COVENANT NOT TO SUE</u>

### A.    <u>Plaintiff's Release</u>

46.     Upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its current and former officers, directors, employees, and its successors and assigns, and their agents, and other representatives release all persons including, without limitation, ACD and CREF3 (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waive all claims alleged in the Notice Letter and Complaint up to the Effective Date of this Consent Decree.

**B.**    **Parties' Release**

47.    Unless specifically provided for in this Consent Decree, the Settling Parties, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, and other representatives release all persons including, without limitation, all other Settling Parties to this Consent Decree (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from any claims, attorneys' fees or expenses related to this matter.

48.    Nothing in this Consent Decree limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to ACD's compliance with the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

**VIII.  FORCE MAJEURE**

49.    A Party shall not be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Settling Party's control as defined by the Force Majeure provisions herein, which includes any act of god, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, pandemic other than COVID-19, unless an order by an agency of competent jurisdiction issued after the Effective Date of this Consent Decree results in the inability to perform or terrorism; restraint by court order or public authority or agency; inability to proceed due to pending litigation under the California Environmental Quality Act; action or non-action by, or inability to obtain the necessary authorizations, approvals (other than landowner authorization(s) or approval(s)), or permits from, any governmental agency; or inability to

obtain equipment or materials from the marketplace if such materials or equipment are not reasonably available, though the cost of such material or equipment is not a factor in whether it is reasonably available. Impossibility and/or Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all of the financial obligations required under this Consent Decree.

50.     If ACD claims compliance was or is impossible as defined by the Force Majeure provisions herein, they shall notify Plaintiff in writing as soon as possible, but in no event more than five (5) business days of the date that ACD learns of the event or circumstance that caused or would cause a violation of this Consent Decree (hereinafter referred to as the "Notice of Nonperformance").

51.     Within ten (10) days of sending the Notice of Nonperformance, ACD shall send Plaintiff a detailed description of the reason for the nonperformance and the specific obligations under the Consent Decree that are or have been affected by the Force Majeure. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by ACD to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. ACD shall adopt all reasonable measures to avoid and minimize such delays.

52.     The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible as defined by the Force Majeure provisions herein due to an event or issue in Paragraph 51, despite the timely good faith efforts of ACD, new deadlines shall be established.

53.     If Plaintiff disagrees with ACD's Notice of Nonperformance as defined by

the Force Majeure provisions herein, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the dispute resolution procedure pursuant to Article VI. In such proceeding, ACD shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances.

## IX.    **MISCELLANEOUS PROVISIONS**

54.    **No Admission of Liability.** Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants, and each of them, maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

55.    **Assignment.** Subject only to the express conditions contained in this Settlement Agreement, all of the rights, duties and obligations contained in this Settlement Agreement shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event a new successor or assign (a "Transferee") will continue ACD's operations at the Facility, ACD shall notify Coastkeeper ten (10) days in advance of the proposed transfer (the "Transfer Notice") and within ten (10) days following the Transfer Notice, ACD will provide Coastkeeper with a written assignment duly executed and acknowledged by ACD and the Transferee assigning ACD's obligations under this Consent Decree to the Transferee.

56.    **Construction.** The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms are defined in the IGP, the Clean Water Act, or specifically herein.

57.    **Choice of Law.** The laws of the United States shall govern this Consent Decree.

58.    **Severability.** In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

59.    **Correspondence.** Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail to all parties identified below:

If to Coastkeeper:

**Orange County Coastkeeper**
Attn: Sarah Spinuzzi
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Email: sarah@coastkeeper.org

If to ACD:

Jessica Phillips
Nikkiso Cryogenic Industries, Inc.
8900 Research Dr.
Irvine, CA 92618
Email: jphillips@NikkisoCEIG.com

With a copy to:

Jennifer Taggart
Demetriou, Del Guercio, Springer & Francis, LLP
915 Wilshire Blvd., Suite 2000
Los Angeles, CA 90017
jtaggart@ddsffirm.com

If to CREF3

Ari Stavsky
2494 Sand Hill Road
Menlo Park, CA 94025
astavsky@fortress.com

With a copy to:

Emily Murray
ALLEN MATKINS
865 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
emurray@allenmatkins.com

60.     Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

61.     **Effect of Consent Decree.** Except as provided herein, Coastkeeper does not, by their consent to this Consent Decree, warrant or aver in any manner that ACD's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of ACD to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

62.     **Counterparts.** This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

63.     **Modification of Consent Decree.** This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

64.     **Full Settlement.** This Consent Decree constitutes a full and final settlement of this matter.

65.     **Full Integration.** This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

66. **Authority of Counsel.** The undersigned representatives for Coastkeeper and ACD each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

67. **Authority of Parties.** The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

68. **Assignment.** The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

1  **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the

2  date first set forth below.

3

4  **APPROVED AS TO CONTENT**

5  Dated:_____    By:_____

6                                    Garry Brown
                                      Executive Director

7                                    Orange County Coastkeeper

8
9  Dated:_____    By:_____
                                      Rosie Ochoa

10                                   President
                                      ACD, LLC

11
12 Dated:_____    By:_____
                                      Mark Gaines

13                                   Chief Financial Officer
                                      Cryogenic Industries, Inc.

14
15 Dated:_____    By:_____
                                      Mark Gaines

16        Chief Financial Officer
                                      Cryogenic Industries Service Companies, LLC

17
18 Dated:_____    By:_____
                                      Koichi Miyamae

19                                   Chief Financial Officer
                                      Nikkiso America, Inc.

20
21 Dated:_____    By:_____
                                      David Hammerman

22                                    Chief Operating Officer
                                      CREF3 Pullman 2 Owner LLC

23

24 **APPROVED AS TO FORM**

25 Dated:_____    By:_____
                                      Sarah Spinuzzi

26                                   Counsel for Plaintiff

27

28
    [PROPOSED] CONSENT DECREE                    Case No.: 8:23−cv−02409−JVS−DFM

Dated:_____     By:_____

Jennifer T. Taggart
Counsel for ACD, LLC; Cryogenic Industries, Inc.; Cryogenic Industries Service Companies, LLC; and Nikkiso America, Inc.

Dated:_____     By:_____

Emily Murray
Counsel for CREF3 Pullman 2 Owner LLC

**IT IS SO ORDERED.**

Dated: August 16, 2024     By: _____